UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Kelsey Sorensen,                                      Civil No. 22-2971 (DWF/DTS)

  Plaintiff,

v.                                                    MEMORANDUM
                                                      OPINION AND ORDER
BlueSky TelePsych, LLC,

  Defendant.

_____

Blaine L.M. Balow, Esq., Maria Victoria Olszewska, Esq., HKM Employment Attorneys, Robyn S. Uri, Esq., Halunen Law, counsel for Plaintiff.

Pamela Abbate-Dattilo, Esq., William Thomas Wheeler, Esq., Fredrikson & Byron, PA, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on Defendant BlueSky TelePsych, LLC's ("BlueSky") motion to dismiss. (Doc. No. 17.) Plaintiff Kelsey Sorensen opposes the motion. (Doc. No. 25.) For the reasons set forth below, the Court grants in part and denies in part BlueSky's motion.

## BACKGROUND

BlueSky is a telemedicine mental health care provider, and Sorensen is a board-certified physician assistant who specializes in psychiatry. (Doc. No. 7 ("Am. Compl.") ¶¶ 2, 6.) In February 2022, BlueSky and Sorensen entered into an employment contract ("Agreement") for a one-year term. (Id. ¶ 9.) The Agreement required that Sorensen

maintain a license to practice medicine in Illinois, Minnesota, and North Carolina. (Doc. No. 1-2 ("Agreement") § 2.4.) The Agreement further provided that Sorensen would work thirty-two clinical hours and eight administrative hours per week. (Am. Compl. ¶ 11.) Her annual salary was $127,500. (*Id.* ¶ 10.)

After entering into the Agreement, Sorensen spent $564 to obtain licenses in Illinois and Michigan.[1] (*Id.* ¶ 22.) BlueSky's owner, Dr. Richelle Strauss, stated that Sorensen would be reimbursed for these costs. (*Id.*) In May 2022, Sorensen began working with patients. (*Id.* ¶ 23.) That same week, Sorensen reached out to Dr. Strauss, letting her know that they needed to sign a collaboration agreement before she began treating Illinois patients. (*Id.* ¶ 27.) Dr. Strauss responded that the company's credentialing specialist, Thao Vu, had already completed the required forms. (*Id.*) Sorensen told Dr. Strauss that it would be impossible to complete the forms without her signature. (*Id.* ¶ 28.)

Later that week, Dr. Strauss texted Sorensen, stating that she had found the Illinois collaboration agreement and it "somehow has [Sorensen's] signature." (*Id.* ¶ 29.) Sorensen again told Dr. Strauss that she had not signed the agreement. (*Id.* ¶ 30.) Dr. Strauss responded: "a forgery perhaps . . ." (*Id.* ¶ 31.) A few minutes later, Dr. Strauss called Sorensen and added Vu to the call. (*Id.* ¶ 32.) Vu stated that she had completed the required documents for Illinois on Sorensen's behalf and signed her name. (*Id.*)

---

[1]     While the Agreement stated that Sorensen had to be licensed in Illinois, North Carolina, and Minnesota, the complaint states that she applied for licenses in Illinois and Michigan. (*Compare* Agreement § 2.4, *with* Am. Compl. ¶ 22.)

The next day, Sorensen asked Dr. Strauss to fill out a form for non-controlled medications.  (*Id.* ¶ 33.)  Dr. Strauss again stated that Vu had already completed that form.  (*Id.* ¶ 34.)  Vu later sent Sorensen an email, noting the various forms that had been submitted on Sorensen's behalf, including a controlled medication license, a collaboration agreement, and the non-controlled prescription delegation.  (*Id.* ¶ 35.)

In a meeting with Dr. Strauss, Sorensen expressed her concern that Vu had filled out these documents without her knowledge.  (*Id.* ¶ 39.)  Dr. Strauss told Sorensen that accusations of forgery were a "big deal" and that she could not work with people who did not trust her.  (*Id.* ¶¶ 39-40.)  Dr. Strauss ended the meeting abruptly.  (*Id.* ¶ 40.)  After the meeting, Sorensen sent Dr. Strauss an email, reiterating that what Vu did put both her and Dr. Strauss at risk.  (*Id.* ¶ 42.)  She ended the email by asking Dr. Strauss to "acknowledge that the handling of these documents was inappropriate, future documents that require [Sorensen's] signature will be signed by [her], and concerns that [she] ha[s] will be treated with understanding instead of defensiveness."  (*Id.*)  Two days later, Sorensen was fired "due to medical ethics violations."  (*Id.* ¶ 43.)

Sorensen brought this action against BlueSky, asserting seven claims: (1) violation of the Fair Labor Standards Act ("FLSA"); (2) declaratory judgment; (3) violation of the Minnesota Payment of Wages Act; (4) retaliation in violation of the Minnesota Whistleblower Act; (5) breach of contract; (6) breach of the covenant of good faith and fair dealing; and (7) unjust enrichment.  BlueSky now asks the Court to dismiss the action in its entirety.

## DISCUSSION

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court assumes all facts in the complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). In doing so, however, a court need not accept as true wholly conclusory allegations, *Hanten v. Sch. Dist. of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions drawn by the pleader from the facts alleged, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990). A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. As the United States Supreme Court reiterated, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under *Twombly*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In sum, this standard "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Twombly*, 550 U.S. at 556.

4

I.  **Choice of Law**

The Court first addresses the narrow choice-of-law provision within the Agreement. "A federal court sitting in diversity must apply the choice of law principles of the state in which it sits, in this case Minnesota." *Fla. State Bd. of Admin. v. L. Eng'g & Env't Servs., Inc.*, 262 F. Supp. 2d 1004, 1010 (D. Minn. 2003). Minnesota favors enforcement of a choice-of-law provision within a contract. *Hagstrom v. Am. Circuit Breaker Corp.*, 518 N.W.2d 46, 48 (Minn. Ct. App. 1994). The Agreement includes the following provision:

> The parties agree that all questions concerning the validity, enforceability or construction of this Agreement shall be determined in accordance with the laws of Illinois.

(Agreement § 6.8.) Because the claims in this case do not relate to the validity, enforcement, or construction of the Agreement, the choice-of-law provision does not govern the action. Instead, the parties appear to agree that Minnesota law applies. Absent an actual conflict of law, no further choice-of-law analysis is needed, and the Court applies the law of the forum state. *Novak Mut. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 590 N.W.2d 670, 672 (Minn. Ct. App. 1999), *aff'd*, 604 N.W.2d 91 (Minn. 2000). The Court therefore applies Minnesota law.

II.  **FLSA**

BlueSky argues that Sorensen's FLSA claim should be dismissed because Sorensen is a professional employee and therefore exempt from the statute. In response, Sorensen voluntarily dismisses the FLSA claim. This claim is dismissed with prejudice.

### III.  Declaratory Judgment

BlueSky next argues that the Court should dismiss Sorensen's declaratory judgment claim because it is wholly duplicative of Sorensen's breach of contract claim. Sorensen argues that the claim is an alternative theory of recovery; however, at the motion hearing, Sorensen appeared to agree that the declaratory judgment claim significantly overlapped with the breach of contract claim.

"Where a party's declaratory judgment claim is purely duplicative of its breach of contract claim, the declaratory judgment claim may be properly dismissed." *MidCountry Bank v. Rajchenbach*, No. 15-cv-3683 (SRN/TNL), 2016 WL 3064066, at *3 (D. Minn. May 31, 2016).  But if the declaratory judgment claim is broader in scope than the breach of contract claim, then both claims may be pled. *Id.* at *3-4.  Here, Sorensen seeks a declaration that BlueSky "materially breached Plaintiff's rights under the Agreement." (Am. Compl. ¶ 78.)  Because the declaratory judgment claim is wholly duplicative of the breach of contract claim, the Court dismisses it.

### IV.  Minnesota Payment of Wages Act

BlueSky next asks the Court to dismiss Sorensen's claim for violation of the Minnesota Payment of Wages Act because Sorensen did not make a demand for unpaid wages, as required by the statute, until the lawsuit was commenced.  In response, Sorensen argues that she was able to demand unpaid wages after the commencement of her lawsuit.

The Minnesota Payment of Wages Act requires an employer to pay an employee unpaid wages "within 24 hours after demand."  Minn. Stat. § 181.13.  If the unpaid wages

are not paid within 24 hours, "the employer is in default." *Id.* "Until there is a demand as required by the statute, after resignation or discharge, the statutory provisions have no application." *Chatfield v. Henderson*, 90 N.W.2d 227, 232 (Minn. 1958).

In *Chatfield*, the Supreme Court of Minnesota held that a demand for unpaid wages must be made prior to the commencement of a lawsuit. *Id.*; *see also Outdoor Env't, Inc. v. Maro*, No. A04-1332, 2005 WL 1020898, at *4 (Minn. Ct. App. May 3, 2005) (concluding that no demand had been made when the respondent made the demand after litigation had begun, in his answer to the complaint). Because Sorensen did not make a demand for unpaid wages prior to the commencement of this lawsuit, the Court must dismiss this claim.

**V.     Minnesota Whistleblower Act**

Sorensen additionally alleges retaliation under the Minnesota Whistleblower Act ("MWA"), Minn. Stat. § 181.932. The MWA provides that an employer may not discharge an employee because the employee, "in good faith, reports a violation, suspected violation, or planned violation of any federal or state law or common law or rule adopted pursuant to law to an employer." Minn. Stat. § 181.932. An actual violation of law is not necessary under the MWA. Instead, "the reported conduct must at least implicate a violation of law." *Grundtner v. Univ. of Minn.*, 730 N.W.2d 323, 329 (Minn. Ct. App. 2007) (internal quotations and citation omitted).

BlueSky argues that this claim should be dismissed because Sorensen's report to Dr. Strauss failed to mention a specific violation of law. The MWA does not require an employee to "identify the specific law or rule that the employee suspects has been

7

violated." *Abraham v. Cnty. of Hennepin*, 639 N.W.2d 342, 354-55 (Minn. 2002). Sorensen does not allege that she specifically mentioned forgery to Dr. Strauss, but Dr. Strauss clearly understood Sorensen to be accusing BlueSky of forgery. During their discussion on May 4, 2022, "Dr. Strauss began the conversation indicating that accusations of forgery are a 'big deal.'" (Am. Compl. ¶ 39.) Moreover, the alleged wrongdoing was not limited to forgery. As Sorensen notes, Illinois law requires that both the physician assistant and collaborating physician sign the written collaboration agreement. 225 ILCS 95/7.5. Sorensen did not complete or sign the collaboration agreement. While Sorensen did not specifically name this statute when she spoke with Dr. Strauss, she made clear that the conduct was wrong and put both her and BlueSky at risk. (*See* Am. Compl. ¶ 42.)

BlueSky also asserts that Sorensen has failed to allege that BlueSky intended to defraud her, which is an element of forgery under Minnesota law. To establish a claim under the MWA, Sorensen must show that she "reported facts that, if proven, would constitute a violation of law." *Becker v. Jostens, Inc.*, 210 F. Supp. 3d 1110, 1126 (D. Minn. 2016) (internal quotations and citation omitted). Sorensen reported to Dr. Strauss that Vu had filled out licensing documents, with her personal information, and signed Sorensen's name without her knowledge or permission to do so. (Am. Compl. ¶¶ 35-42.) From these facts, Dr. Strauss herself concluded that Sorensen was alleging forgery. (Am. Compl. ¶ 39.) While at the time of her report, Sorensen may not have had evidence of Vu's specific intent, the Court can plausibly infer that Vu knew that she was submitting documents with a forged signature and with personal information that

8

Sorensen had not reviewed. Moreover, given BlueSky's suspect reaction to Sorensen's report—admonishing Sorensen for accusing the company of forgery and then firing her days later—the Court can plausibly infer that Vu, or BlueSky more generally, intended to deceive the licensing agency. This, of course, may not be the case. But the Court is satisfied at this stage of the proceedings that Sorensen's report to Dr. Strauss plausibly implicated a violation of the law.

Even if Sorensen had not plausibly alleged forgery, BlueSky's conduct implicates the Illinois Physician Assistant Practice Act, which requires that a collaboration agreement be signed by the physician assistant and collaborating physician. 225 ILCS 95/7.5. The statute also lists a variety of disciplinary actions that the Department may take if the licensing documents contain material misstatements or if someone "mak[es] any misrepresentation for the purpose of obtaining licenses." 225 ILCS 95/21. Sorensen has plausibly alleged a violation of this statute.

Finally, BlueSky argues that the claim should be dismissed because BlueSky was already aware of what was going on. But "an employer's prior knowledge of a violation at the time of an employee's report" does not exempt the employer from liability when the "employee reports the violation . . . without knowledge that the employer already was aware of it." *Pedersen v. Bio-Med. Applications of Minn.*, 992 F. Supp. 2d 934, 940 (D. Minn. 2014) (citation omitted). BlueSky points to no facts in the complaint that suggest that Sorensen was aware of BlueSky's prior knowledge. And certain facts in the complaint suggest that Dr. Strauss was not aware that Vu was signing licensing documents. For example, Dr. Strauss sent Sorensen a text message stating that the

9

Illinois collaboration agreement "somehow ha[d] [Sorensen's] signature" on it. (Am. Compl. ¶ 29.) When Sorensen said she had not signed the document, Dr. Strauss joked that it was "a forgery perhaps . . . ." (*Id.* ¶ 31.) While Dr. Strauss later asserted that Vu completed documents for the company "all the time" (*id.* ¶ 39), her prior comments cast doubt on that statement.

Overall, the Court concludes that Sorensen has sufficiently pled a violation of the MWA. The Court therefore denies BlueSky's request to dismiss this claim.

## VI. Breach of Contract

Sorensen also brings a breach of contract claim against BlueSky, arguing that BlueSky (1) failed to reimburse her for the licensing fees; (2) failed to pay her for all of the hours she worked; and (3) wrongfully terminated her without just cause. The Agreement, which was attached to the complaint, is embraced by the pleadings. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014). To prevail on a breach of contract claim under Minnesota law, Sorensen must show the following: "(1) formation of a contract, (2) performance by [Sorensen] of any conditions precedent to [her] right to demand performance by [BlueSky], and (3) breach of the contract by [BlueSky]." *Lyon Fin. Servs. Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014).

BlueSky argues that this claim should be dismissed for two reasons. First, BlueSky appears to argue that because that Agreement gave it the "sole discretion" to determine what constituted a breach of the ethical rules, BlueSky could terminate Sorensen for any reason without explanation. This interpretation ignores the first half of the clause, which provided that Sorensen could be terminated for a breach of "the rules

10

and principles of medical ethics." (Agreement § 4.2(h).)  While BlueSky had the "sole discretion" to determine when a violation occurred, the Agreement still required that the termination be related to "the rules and principles of medical ethics."  (*Id.*)  According to the complaint, BlueSky did not tell Sorensen which rule or principle of medical ethics had been violated when she was terminated.  (Am. Compl. ¶ 43.)  Similarly, BlueSky's briefs are devoid of any mention of a violation of a rule or principle of medical ethics.  Because it is entirely unclear what rule or principle of medical ethics Sorensen violated, the Court concludes that Sorensen has plausibly alleged that BlueSky terminated her without just cause.

      Second, BlueSky argues that the Agreement required Sorensen to be licensed in Illinois and Michigan.  Thus, BlueSky contends, any later promise by BlueSky to pay for Sorensen's licensing fees required new consideration.  As an initial matter, the Agreement did not require that Sorensen be licensed in Michigan.  The Agreement required Sorensen to be licensed "in Illinois and Minnesota and North Carolina."  (Agreement § 2.4.)  Any agreement between BlueSky and Sorensen for Sorensen to become licensed in Michigan falls outside of this Agreement.  And Sorensen has plausibly alleged that, as part of a separate agreement, BlueSky agreed to pay her Michigan licensing fees.  As for the Illinois licensing fees, the Court will determine the scope of the Agreement at a later date, likely at the summary judgment stage.

      Lastly, BlueSky did not respond to Sorensen's assertion that she was not paid for all of the hours she worked.  Sorensen has plausibly alleged that BlueSky breached the Agreement by not fully compensating her for her work.

In sum, the Court concludes that Sorensen has sufficiently alleged a breach of contract claim.

## VII. Breach of the Implied Covenant of Good Faith and Fair Dealing

BlueSky contends that Sorensen's breach of the covenant of good faith and fair dealing claim should be dismissed because Sorensen is merely reasserting her breach of contract claim. Sorensen argues that this claim involves an alternative theory of recovery.

Under Minnesota law, each contract contains an implied covenant of good faith and fair dealing. *Columbia Cas. Co. v. 3M Co.*, 814 N.W.2d 33, 36 (Minn. Ct. App. 2012). "[W]hen a contract explicitly gives one party discretion over some aspect of the contracting parties' relationship, and the contract does not place any restriction or qualification on that discretion, then the implied covenant prevents the party who has the unqualified discretion from using it 'dishonestly, maliciously, or otherwise in subjective bad faith.'" *Selective Ins. Co. of S.C. v. Sela*, 413 F. Supp. 3d 861, 863 (D. Minn. 2019).

The Agreement in this case provided that BlueSky could terminate Sorensen if she breached "the rules and principles of medical ethics as determined by [BlueSky] in its sole discretion." (Agreement § 4.2(h).) In her breach of contract claim, Sorensen argues that BlueSky terminated Sorensen for a reason other than an ethical violation, which is a breach of an express term in the Agreement. Alternatively, Sorensen argues that BlueSky breached an implied covenant. Sorensen can prevail on this alternative claim—even if BlueSky identifies an ethical violation—if Sorensen demonstrates that BlueSky acted "dishonestly, maliciously, or otherwise in subjective bad faith" when it determined, in its

12

"sole discretion," that Sorensen violated an ethical standard. *Selective Ins. Co. of S.C.*, 413 F. Supp. 3d at 863 (internal quotations omitted). These are two separate claims. While the underlying facts may overlap, the theories of recovery do not. Because the facts in the complaint support Sorensen's claim that BlueSky acted in bad faith, the Court will not dismiss this claim.

## VIII. Unjust Enrichment

Sorensen's last claim is for unjust enrichment. "To establish a claim for unjust enrichment under Minnesota law, a plaintiff must demonstrate that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit." *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1019 (D. Minn. 2012) (internal quotations and citation omitted).

Sorensen argues that BlueSky was unjustly enriched by (1) failing to make payments for work performed by her and (2) failing to reimburse her for expenses related to obtaining licenses. (Am. Compl. ¶¶ 94-97.) BlueSky argues that this claim merely restates Sorensen's breach of contract claim and should therefore be dismissed.

"Although a party may not ultimately recover on both breach of contract and unjust enrichment claims, it may pursue these alternative theories until it is conclusively decided that a valid and enforceable contract exists between the parties which governs the specific dispute before the court." *Knotts v. Nissan N. Am., Inc.*, 346 F. Supp. 3d 1310, 1323 (D. Minn. 2018) (internal quotations and citation omitted). While BlueSky argues that the Agreement governed the terms of Sorensen's compensation and employment

with BlueSky, Sorensen asserts that she is entitled to payment for work she completed prior to the effective date of the Agreement. (*See* Am. Compl. ¶ 21.) Moreover, it is unclear whether a valid and enforceable agreement existed between Sorensen and BlueSky regarding the Michigan licensure requirement and fee reimbursement. At this time, the Court will not make a finding about the scope of the Agreement or the existence of a second agreement. Instead, these findings will likely be made at the summary judgment stage, at which point the Court will determine whether the unjust enrichment claim should be dismissed. Until then, Sorensen has sufficiently pled this alternative claim.

## CONCLUSION

For the reasons outlined above, the Court grants BlueSky's motion to dismiss Sorensen's FLSA, declaratory judgment, and Minnesota Payment of Wages Act claims. The Court denies BlueSky's motion with respect to Sorensen's remaining claims of retaliation in violation of the Minnesota Whistleblower Act, breach of contract, breach of the covenant of good faith and fair dealing, and unjust enrichment.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant BlueSky TelePsych, LLC's motion to dismiss (Doc. No. [17]) is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The Court **DENIES** Defendant's motion to dismiss Plaintiff's claim of retaliation in violation of the Minnesota Whistleblower act (Count I).

  b.  The Court **DENIES** Defendant's motion to dismiss Plaintiff's breach of contract claim (Count II).

  c.  The Court **DENIES** Defendant's motion to dismiss Plaintiff's breach of the covenant of good faith and fair dealing claim (Count III).

  d.  The Court **GRANTS** Defendant's motion to dismiss Plaintiff's declaratory judgment claim (Count IV). This claim is therefore **DISMISSED WITH PREJUDICE**.

  e.  The Court **GRANTS** Defendant's motion to dismiss Plaintiff's Fair Labor Standards Act claim (Count V). This claim is therefore **DISMISSED WITH PREJUDICE**.

  f.  The Court **GRANTS** Defendant's motion to dismiss Plaintiff's violation of the Minnesota Payment of Wages Act claim (Count VI). This claim is therefore **DISMISSED WITH PREJUDICE**.

  g.  The Court **DENIES** Defendant's motion to dismiss Plaintiff's unjust enrichment claim (Count VII).

Dated: May 19, 2023       s/Donovan W. Frank
                DONOVAN W. FRANK
                United States District Judge